**Dawn V. MARTIN, Appellant**

v.

**HOWARD UNIVERSITY, et al., Appellees.**

No. 06–7157.

United States Court of Appeals, District of Columbia Circuit.

March 31, 2008.

Rehearing En Banc Denied May 20, 2008.

Dawn V. Martin, Law Office of Dawn V. Martin, Washington, DC, pro se.

Leroy T. Jenkins, Jr., Brian L. Schwalb, Maurice Baskin, Venable LLP, Washington, DC; Frederick Douglas Cooke, Jr., Rubin, Winston, Diercks, Harris & Cooke, LLP, Washington, DC, for Appellees.

Roberta Y. Wright, Law Office of Roberta Yvonne Wright, Washington, DC, for Amicus Curiae National Association of Women Lawyers.

Before: HENDERSON, Circuit Judge, and EDWARDS and WILLIAMS, Senior Circuit Judges.

### *JUDGMENT*

PER CURIAM.

This cause was considered on the record from the United States District Court for the District of Columbia, and was briefed and argued by counsel. It is

ORDERED AND ADJUDGED that the judgment of the District Court be affirmed for the reasons set forth in the accompanying memorandum.

Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate herein until seven days after resolution of any timely petition for rehearing or rehearing *en banc*. *See* FED. R.APP. P. 41(b); D.C. CIR. R. 41.

### *MEMORANDUM*

Appellant Dawn Martin challenges several decisions of the trial judge and a jury

verdict regarding her discrimination, contract, and tort claims against Howard University and Howard University School of Law (collectively "Howard"), and Alice Gresham–Bullock, former Dean of the law school. The factual background of this case is adequately sketched in a Memorandum Opinion of Chief Judge Hogan. *See Martin v. Howard University*, No. 99–1175, 2006 WL 2850656 (D.D.C. Oct.4, 2006).

Plaintiff Dawn Martin, a Visiting Professor at Howard University School of Law from July 1996 through May 1998, brought this action against several defendants on May 14, 1999. . . .

Plaintiff alleges that she was the victim of a hostile work environment in violation of Title VII and the District of Columbia Human Rights Act as a result of the conduct of Mr. Leonard Harrison, a homeless person who was neither an employee of, nor a student at, Howard. Specifically, Mr. Harrison sent Plaintiff two letters that were hand-delivered to Plaintiff's office, left voice mail messages for her, and attempted three personal visits to Plaintiff's office (Plaintiff was only in her office during the third visit and Harrison was chased out by a security officer), and at one point stated that he thought Plaintiff was his wife. Plaintiff has claimed that Howard's response and inaction towards Mr. Harrison is a violation of Title VII. Plaintiff's other two claims include retaliation in violation of Title VII and breach of contract. Plaintiff asserted that because of her complaints regarding Mr. Harrison and her requests for protection from Mr. Harrison, the administration retaliated against her in several ways. . . . [First,] the then Dean of the law school, Dean Bullock, got the Appointments, Promotions and Tenure Committee ("APT Committee") to not recommend Plaintiff for the EEO/Labor Law tenure-track position she sought and to instead rec-

ommend Professor Cunningham, and [second,] that Dean Newsom sent Plaintiff a letter asking her to vacate her office early, in May 1998, rather than in June or July 1998 when most professors had to leave. Plaintiff also alleges she had an oral contract that her . . . visitorship would be renewed until a tenure-track position became available, at which time she would get that position. Plaintiff alleged the contract was breached when she was not selected for any tenure-track position.

*Id.* at *1 (citations omitted).

As noted in Chief Judge Hogan's opinion, Ms. Martin's first claim of discrimination is that the law school's response to Harrison was inadequate, causing her to endure a hostile work environment. Her second discrimination claim is that because she complained of sexual harassment by Harrison, the law school retaliated against her by, *inter alia*, failing to offer her continued employment. Ms. Martin also argues that Howard and Dean Bullock caused her to suffer emotional distress by failing to provide her with a tenure-track position and adequately protect her from Harrison. Finally, Ms. Martin argues that the law school violated a binding promise to continue her employment, either as a visiting professor or a tenure-track professor.

Before the jury trial, the District Court granted summary judgment for all defendants on Ms. Martin's tort claim, and limited Ms. Martin's retaliation claims to the law school's decision not to hire Ms. Martin and its order for her to vacate her office. Following the trial, the jury found: (1) that Ms. Martin had failed to prove that Harrison's conduct was based on her gender; (2) that Ms. Martin had not proven that she was engaged in legally protected conduct when she informed the law school about Harrison's behavior; and (3)

that Ms. Martin had failed to prove that she had ever been promised future employment by the law school. These findings disposed of Ms. Martin's claims. The District Court denied Ms. Martin's motions for judgment as a matter of law, for relief from the final judgment, and for a new trial. We now review those decisions.

I.

Before trial, Howard contended that Ms. Martin's hostile work environment claim should be dismissed, because she could not show that Harrison's conduct was based on gender and that Harrison's conduct was sufficiently severe or pervasive. In a memorandum opinion addressing Defendants' Motion to Dismiss or Alternatively for Summary Judgment with regard to Ms. Martin's hostile work environment claim, the District Court first stated that, "[i]n this case, it is clear that Plaintiff was only the object of Mr. Harrison's attention because she was a female; therefore, the alleged stalking activities do appear to have been 'because of sex' even if they were not inherently sexual in nature." *Martin v. Howard Univ.,* No. 99–1175, 1999 WL 1295339 (D.D.C. Dec.16, 1999). The trial judge then went on to say:

> [S]ince the Court finds that Mr. Harrison's conduct *could be* considered sexual harassment and that the question of whether this behavior was sufficiently severe or pervasive to be actionable is a jury question, and since Defendants admit that there is a material dispute regarding whether the University took appropriate actions in connection with Mr. Harrison, the Court must deny Defendants' Motion to Dismiss or Alternatively for Summary Judgment with regard to the Hostile Work Environment claim.

*Id.* (emphasis added). The District Court never held that Harrison's alleged stalking activities constituted conduct based on gender. The question of whether Harrison's conduct could be considered sexual

harassment was then submitted to the jury, along with Ms. Martin's other claims.

■ Ms. Martin now argues that the question of whether Harrison's behavior was based on Ms. Martin's gender should not have been submitted to the jury, because it was decided in her favor in Chief Judge Hogan's 1999 opinion addressing Defendants' Motion to Dismiss or Alternatively for Summary Judgment. To bolster this argument, Ms. Martin points to a 2003 Magistrate Judge's Report and Recommendation stating that the trial judge had already "concluded [that] [t]he alleged harassment by Harrison of the plaintiff was based on her sex." *Martin v. Howard Univ.,* No. 99–1175, 2003 WL 22383031, at *2 (D.D.C. Oct.20, 2003) (Report and Recommendation). Ms. Martin contends that submitting this question to the jury violated the law of the case.

Martin obviously misinterprets the meaning of the District Court's denial of appellees' Motion to Dismiss or Alternatively for Summary Judgment. At that stage of the litigation, the District Court assumed the accuracy of the facts alleged by Ms. Martin and, based on her allegations, decided that it could not find as a matter of law that appellees were entitled to judgment. In other words, Chief Judge Hogan found only "that Mr. Harrison's conduct *could be* considered sexual harassment" and, thus, properly rejected appellees' motion to take the issue from the jury. The language in the Magistrate Judge's Report and Recommendation is admittedly inartful, but it did not (and could not) countermand the holding of the District Court. In short, in submitting the question of whether Harrison's behavior was based on Ms. Martin's gender, the District Court did not violate the law of the case, nor did it act in a fashion that was contrary to its 1999 decision on this matter.

## II.

■ Ms. Martin also argues that she was prevented from fully presenting her case to the jury on the "based on gender" question. However, she does not indicate any action that she took—or failed to take—based on a misunderstanding as to what claims were before the jury. Indeed, it is absolutely clear from the record in this case that both sides addressed the "based on gender" question at trial and neither side was foreclosed from presenting its case on this issue. Because Ms. Martin fails to show that her case was somehow impermissibly compromised, we reject this challenge to the jury's verdict.

## III.

■ Ms. Martin additionally contends that the District Court erred in denying her motion for a judgment as a matter of law on the "based on gender" question. We disagree. The grant of judgment as a matter of law is rarely appropriate. "Intrusion upon the rightful province of the jury is highly disfavored. We have repeatedly emphasized that the jury's verdict must stand unless the evidence, together with all inferences that can reasonably be drawn therefrom is so one-sided that reasonable people could not disagree on the verdict." *Smith v. District of Columbia,* 413 F.3d 86, 97 (D.C.Cir.2005) (alterations and quotation marks omitted). Ms. Martin does not meet this exceedingly high standard. There was ample evidence—including the fact that Harrison had stalked at least one man in the past—from which the jury could have concluded that Harrison's conduct was not based on Ms. Martin's gender. Indeed, the jury reasonably may have concluded that Harrison's stalking was attributable to his *misidentification* of Ms. Martin as his wife, not bad behavior based on Ms. Martin's gender. We need not decide whether and under what circumstances stalking might amount to harassment

"based on gender." Rather, we merely hold that on the facts of this case, the jury's verdict must stand.

## IV.

■ Ms. Martin further contends that the District Court should have entered judgment as a matter of law on her retaliation and contract claims. We reject these claims as well. Under the applicable standard governing judgments as a matter of law, the District Court acted correctly on both issues. The jury had evidence before it, including Ms. Martin's own earlier characterization of Harrison's conduct as a security matter, not sexual harassment, from which it could conclude that Ms. Martin's complaints about Harrison were not protected activity. And the jury's verdict that Ms. Martin was not promised future employment by Howard was amply supported by the evidence.

## V.

■ Ms. Martin next challenges the grants of summary judgment for appellees on her tort and retaliation claims. The District Court's finding that Ms. Martin had failed to allege the outrageous conduct needed to make out a claim of intentional infliction of emotion distress is well-founded. Under District of Columbia law, this tort "requires conduct so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Browning v. Clinton,* 292 F.3d 235, 248 (D.C.Cir.2002) (quotation marks omitted). Ms. Martin alleged no such outrageous conduct.

■ The District Court limited Ms. Martin's retaliation claims to two alleged harms—the decision of Howard Law not to hire her for a tenure-track position in

equal employment opportunity law and her expulsion from her office. Any challenge to these alleged harms is now moot. Because the jury reasonably found that Ms. Martin had not engaged in protected activity, the necessary predicate for her claims of retaliation is missing.

## VI.

Ms. Martin raises various challenges to evidentiary and procedural decisions made by the District Court during trial, and contests some jury instructions. The trial court's evidentiary and procedural decisions at issue are reviewed for abuse of discretion. *See, e.g., United States v. Graham,* 317 F.3d 262, 266 (D.C.Cir.2003) (hearsay); *United States v. Hemphill,* 514 F.3d 1350, 1360 (D.C.Cir.2008) (cross examination). After careful review of the record, we can find no abuse of discretion in any of these decisions.

Ms. Martin has also failed to show that any alleged error with respect to a jury instruction was other than harmless. FED.R.CIV.P. 61. Indeed, we find that the jury instructions challenged by Ms. Martin were proper. The District Court's instruction on the standard for protected activity in retaliation claims was correct. And the District Court properly excluded as irrelevant the District of Columbia criminal code's definition of stalking, which Ms. Martin sought to have included in the jury instructions on hostile work environment.

## VII.

Ms. Martin has moved under Federal Rule of Civil Procedure 60(b)(3) for relief from the judgment based on the allegedly perjured testimony of former-Dean Bullock. It is "well-settled that a litigant seeking relief from a judgment under [Rule] 60(b)(3) based on allegations of fraud upon the court must prove the fraud by clear and convincing evidence." *Shepherd v. Am. Broad. Cos.,* 62 F.3d 1469, 1477 (D.C.Cir.1995). Ms. Martin has not come close to meeting this standard. Nor has she shown prejudice. *Summers v. Howard Univ.,* 374 F.3d 1188, 1193 (D.C.Cir.2004).

## VIII.

In her brief to this court, Ms. Martin asserts that Howard's failure to hire her for an equal employment opportunity law position was a violation of the Age Discrimination in Employment Act ("ADEA"), because it was allegedly revealed at trial that the person appointed to this position was selected because of her age. Ms. Martin's complaint did not include an ADEA claim, so this matter was not tried before the jury and it is not properly before this court. *Singleton v. Wulff,* 428 U.S. 106, 120, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976) ("It is the general rule, of course, that a federal appellate court does not consider an issue not passed upon below."). In her reply brief, Ms. Martin belatedly argues that she "had no reason or opportunity, prior to trial, to amend the complaint to include an ADEA claim[, because i]t was only at trial that [Howard Law] Prof. Leggett ... made the eleventh-hour admission—that he selected Visiting Assistant Professor Cunningham over Visiting Associate Professor Martin to teach the EEO class because of her age that this issue arose." Appellant's Reply Br. at 19 (emphasis omitted). However, Ms. Martin did not object at trial or seek to amend her complaint upon hearing Professor Leggett's testimony. Ms. Martin asserts that she asked in her post-trial motion to be "permitted to amend her complaint to include a claim of age discrimination under the ADEA," citing her Reply to Defendant's Opposition to Plaintiff's Motion for Judgment on Her Retaliation Claims, Or in the Alternative, for a New Trial at 22–23, *reprinted in* Joint Appendix ("JA") 10,264–65. *Id.* But

there is no motion to amend the complaint at the cited pages. Rather, Ms. Martin merely stated that she was *"considering* filing a motion to amend her complaint to conform to the evidence produced at trial, to add a claim under the ADEA." JA 10,264 n. 20 (emphasis added). And in responding to Ms. Martin's post-trial motion, the District Court plainly saw no motion to amend the complaint. We therefore reject Ms. Martin's belated attempt to add an ADEA claim to this case.

## IX.

Finally, Ms. Martin's challenge to the imposition of costs by the District Court is not ripe for review. As explained by the trial court, costs are imposed *after* this court issues its mandate. *Martin v. Howard Univ.,* Civ. Action No. 99–1175, slip op. at 1 (D.D.C. Jan. 23, 2007) (order). Because the District Court has not yet exercised its discretion on this question, there is no ruling to review.

The judgment of the District Court is hereby affirmed.